NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Evison J. DENT and Doris L. Dent,
co-partners, dba Chico Convalescent
Hospital, Respondent.

No. 74–2474.

United States Court of Appeals,
Ninth Circuit.

March 19, 1976.

Thomas A. Woodley (argued), N.L.R.B., Washington, D. C., for petitioner.

J. Mark Montobbio (argued), Severson, Werson, Berke & Melchior, San Francisco, Cal., for respondent.

## OPINION

Before KOELSCH and ELY, Circuit Judges and TURRENTINE, District Judge.*

TURRENTINE, District Judge:

Up until June 1, 1972, Chico Convalescent Hospital (hereinafter referred to as "CCH") was part of a chain owned by Statewide Convalescent Hospitals. In the spring of 1972, the owners of the real property on which the hospital was situated cancelled Statewide's lease because of defaults in its rental obligations. An agreement was reached whereby Statewide conveyed title to all personal property associated with the hospital operation to the landlords in satisfaction of the rents owing to them. Thereafter, the landlords leased the hospital to the Dents, who assumed control of the operation on June 1.

Although the hospital employees had been represented by the union for purposes of bargaining with Statewide, the Dents unilaterally reduced employee wages on June 15, two weeks after assuming control of CCH. On July 13, representatives of the Dents and the union met to negotiate a new contract for CCH employees. However,

when the Dents refused to restore wages to their previous levels, the negotiations broke down, and, on July 29, the employees voted to strike over the unilateral wage cuts and the alleged failure of the company to bargain in good faith at the July 13 meeting. The strike commenced on August 19 and was marred by numerous and serious acts of violence and intimidation on the part of the union leaders and striking employees.

The administrative judge concluded that CCH had violated § 8(a)(1) and (5) of the National Labor Relations Act [1] by its reductions in the wage rates on June 15 and by its refusal to restore the wages to their former levels on July 13. He declined, however, to issue the normal bargaining order because of the misconduct of the union during the strike. Instead, he ordered the holding of a "remedial election" to determine whether the union continues to enjoy majority representative status. He further ordered the reinstatement of all striking employees. Finally, he directed the respondents to restore the wage rates to their pre-June 15 levels and awarded back pay at the higher rate to all employees for all hours worked since the reduction. The higher rates are to remain in effect until either 1) the company and the union reach agreement on a contract, 2) the company and the union reach an impasse in bargaining, or 3) the union loses the election to be held in accordance with the order.

The Board affirmed the decision of the administrative judge in all essential respects and is before us seeking enforcement of its order. We enforce the Board's order except for that part which awards back pay at the pre-reduction levels.

## I

Once an employer is under a duty to bargain collectively, it is a violation of that duty, and an unfair labor practice, to

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

[1]. Those sections make it an unfair labor practice "(1) to interfere with, restrain, or coerce

employees in the exercise of the rights guaranteed in section 157 of this title," or "(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

institute changes in conditions of employment without first consulting the union. *N.L.R.B. v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). A successor employer has an obligation to bargain with the incumbent union when it voluntarily takes over a bargaining unit which is largely intact and has been certified as the majority representative. *N.L.R.B. v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). This duty applies as well to unions which, as in this case, have been voluntarily recognized by the previous employer. *N.L.R.B. v. Denham,* 469 F.2d 239 (9th Cir. 1972), vacated and remanded on other grounds, 411 U.S. 945, 93 S.Ct. 1925, 36 L.Ed.2d 407.

■ The record before us adequately supports the trial examiner's findings that the bargaining unit remained appropriate after the takeover by the Dents and that the presumption of the union's majority representative status was not rebutted. The Dents retained 35 of the 36 unit employees formerly employed by Statewide. They utilized the same premises, equipment, and supplies to care for the same sixty patients as had Statewide. Finally, the Dents themselves recognized the union as the bargaining representative of their employees at the July 13 meeting. Thus, under the *Burns* and *Katz* decisions, the unilateral changes[2] in employee wages violated § 8(a)(5) of the Act.

## II

The Board also found that the Dents failed to bargain in good faith at the July 13 meeting with the union representatives. That finding is predicated on the respondents' refusal to restore the wages to their previous levels pending bargaining.

■ Whether the obligation to bargain in good faith has been satisfied is a question of fact to be determined by examining the circumstances in each case including "[t]he previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations . . . ." *Local 833, UAW–AFL–CIO, etc. v. N.L.R.B.,* 112 U.S.App.D.C. 107, 300 F.2d 699, 706 (1962), *cert. denied, Kohler Co. v. Local 833, etc.,* 370 U.S. 911, 82 S.Ct. 1258, 8 L.Ed.2d 405 (1962). Findings as to the good faith of parties involved in collective bargaining is a matter for the Board's expertise and will not be upset unless unsupported by substantial evidence. *Fruit and Vegetable Packers, etc. v. N.L.R.B.,* 114 U.S.App.D.C. 388, 316 F.2d 389 (1963); *N.L.R.B. v. Custom Chair Manufacturing Co.,* 422 F.2d 1300 (9th Cir. 1970). Having concluded that the unilateral wage reduction was an unfair labor practice, we cannot say that the Board's finding that the respondents failed to bargain in good faith when they refused to restore the wages is clearly erroneous.

## III

The last issue raised by the respondents is the propriety of the relief granted. Title 29 U.S.C. § 160(c) provides in part that, upon a finding that an employer is guilty of an unfair labor practice the Board may issue an order requiring the employer to take "such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the Act]." As previously discussed, the Board ordered CCH to reinstate all striking

2. Respondents contend that the wage scale established on June 15 constituted the initial terms of employment, permissible under *Burns.* This argument fails on two grounds. First, the record establishes that the Dents told the unit employees that their date of hire would be deemed to be June 1. Further, the Dents continued in effect the rates previously paid by Statewide for the first two weeks that they owned the hospital. Thus, as a matter of fact, the rates set on June 15 were not the initial terms of employment. Secondly, the Court in

*Burns,* although acknowledging that a successor employer is ordinarily free to set the terms upon which it will hire its employees, recognized that "there will be instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will be appropriate to have him initially consult with the employees' bargaining representative before he fixes terms." 406 U.S. at 294–95, 92 S.Ct. at 1586, 32 L.Ed.2d at 77. This is obviously one of those instances.

employees, to restore the wage rates to their pre-reduction levels, and to pay all employees, for hours actually worked since the reduction, the amounts they lost as a result of the wage cuts. The Board also ordered the holding of a remedial election to test the continued majority representative status of the union. The respondents argue that, in light of the seriousness of the union's unlawful conduct during the strike, this order is an abuse of the Board's discretion.

We are aware that judicial review of the remedies granted by the Board is limited, "because the relation of remedy to policy is peculiarly a matter for administrative competence . . . ." *Overnite Transportation Company v. N.L.R.B.,* 372 F.2d 765, 770 (4th Cir. 1967). Therefore, the relief granted by the Board will normally stand "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Ibid.*

We cannot fault the portions of the Board's order reinstating the striking employees and directing the holding of the remedial election. We cannot, however, sustain the award of back pay under these circumstances.

Congress has directed that the obligation to bargain does not compel the making of a concession by either party. 29 U.S.C. § 158(b). This factor was persuasive in the Supreme Court's holding in *Burns* that a successor employer is not bound by the terms of his predecessor's collective bargaining agreement. Yet, the effect of the Board's back pay award, if enforced, is to force the Dents to abide by the wage provisions of their predecessor's contract with the Union retroactively for the three and a half years that they have owned CCH. This is a longer period of time than the contract period in the union's agreement with Statewide.

"A sanction for refusal to bargain that would treat the guilty party as if he had agreed to what the other party demanded although the evidence shows he would have done nothing of the sort would give insufficient respect to Congress' direction in § 8(d) that the obligation to bargain 'does not compel either party to agree to a proposal or require the making of a concession.' "

*Cooper Thermometer Company v. N.L.R.B.,* 376 F.2d 684, 690 (2d Cir. 1967); *see also, Fraser & Johnston Company v. N.L.R.B.,* 469 F.2d 1259, 1266 (9th Cir. 1972).

Here, it is clear that the Dents would not have agreed to the wage rates which had existed under the previous contract. They had determined from an informal study of the prevailing wage rates in the community for similar jobs that many classes of their employees had been overcompensated by Statewide, and they had concluded that this factor was one of the primary reasons for Statewide's financial difficulties. We think that the back pay award acts as a penalty which does not, under all the circumstances of this case, further the purposes of the Act.

Enforcement granted in part; denied in part.