**NEW BREED LEASING CORPO-
RATION, Petitioner and
Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent and
Cross–Petitioner.**

**Nos. 95–70607, 95–70696.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1996.

Decided April 30, 1997.

Michael R. Goldstein, Musick, Peeler & Garrett, Los Angeles, California, for petitioner and cross-respondent New Breed Leasing Corporation.

Fred L. Cornnell, National Labor Relations Board, Washington, D.C., for respondent and cross-petitioner National Labor Relations Board.

Before: PREGERSON, D.W. NELSON, and O'SCANNLAIN, Circuit Judges.

PREGERSON, Circuit Judge:

New Breed Leasing Corporation ("New Breed") petitions for review of a National Labor Relations Board ("Board") decision that New Breed engaged in unfair labor practices in violation of sections 8(a)(1), 8(a)(3), and (8)(a)(5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1),(3),(5), by refusing to hire its predecessor's employees because of their union affiliation and by refusing to recognize and bargain with the unions representing the employees. The Board's General Counsel cross-petitions for enforcement of the Board's order which requires New Breed to reinstate its predecessor's employees with back pay, restore original working conditions, and bargain with the unions. We deny the petition for review and enforce the Board's order.

## FACTS AND PROCEDURAL HISTORY

### I. The Compton Army Terminal

The United States Army operates a container freight station and vehicle processing facility ("army terminal") in Compton, California. The operation of the terminal is handled by private employers under contract with the Army. These employers have recognized the International Longshoremen's and Warehousemen's Union, Local 13; International Longshoremen's and Warehousemen's Union, Local 63; and the International Longshoremen's and Warehousemen's Union, Local 63, Office Clerical Unit (collectively, the "Unions"), as the collective-bargaining representatives of the terminal's employees.

From 1991 to 1994, Maersk Pacific Limited ("Maersk") operated the army terminal. Maersk was a member of the Pacific Maritime Association ("PMA"), a multi-employer organization that represented its members in negotiating and administering collective bargaining agreements. Maersk was bound to

Union contracts through its membership in the PMA, and employed twelve employees represented by the Unions.

## II. New Breed's Bid and Hiring Practices

A new contract to operate the army terminal was scheduled to take effect on April 1, 1994. Among the bidders for this contract were Maersk, the then-current operator, and New Breed, a North Carolina company. New Breed was awarded the contract in March 1994.

In its bid, New Breed stated that it had met with the PMA regarding working with that organization to obtain long-term and occasional employees. The bid also suggested that notice of job opportunities could be posted and selection of employees conducted under the auspices of the PMA. In its bid, New Breed explained that "if existing employees are retained ... any added training will take place as soon as possible."

In February 1994, before the contract was awarded, New Breed submitted a membership application and $1,000 fee to the PMA. On March 9, the PMA sent a letter to New Breed informing it that its membership application had been accepted, and that an officer of New Breed would need to sign the PMA bylaws. New Breed failed to cause a company officer to sign these bylaws. On March 11, the PMA sent a letter agreement to New Breed that explained financial and payroll details. New Breed failed to sign and return that letter. Because New Breed did not complete the application process, it never became a PMA member.

After being awarded the army terminal contracts, New Breed began recruiting employees for the army terminal in mid-March. New Breed and the Board dispute how New Breed approached Maersk's employees. Union agents testified that James Moynihan and William Lee-respectively, New Breed's operation manager and consultant-expressly indicated that Maersk's employees would be retained. One Maersk employee, Bernis Gald, testified that Moynihan and Lee told her that she would be needed during the transition period when New Breed assumed operations. Another Maersk employee, Eric Gonzales, testified that Moynihan informed him that New Breed would "go with the Local 13 work force," and that Moynihan said, "I don't see any problem with the present work force there ... it is going to stay status quo." New Breed contests the truth of the testimony of each of these witnesses.

It is uncontested that New Breed recruited new employees by placing anonymous advertisements in local newspapers. Responses were then screened, and promising applicants were interviewed at a local hotel. New Breed did not post notices of job openings at the army terminal; did not tell Maersk employees of the interview process; and did not inform the Unions of the hiring process. As a result, no Maersk employees filed employment applications with New Breed, or requested interviews.

After briefs were submitted in this case, but before oral argument, the Army informed New Breed that its contract would not be extended. New Breed's contract expires on March 31, 1997.

## III. New Breed and the NLRB

In April 1994, the Unions filed unfair labor practice charges against New Breed with the Board. In May, the NLRB Regional Director for Region 21 ("Regional Director") issued unfair labor practice complaints, alleging that New Breed was a successor employer with respect to the former Maersk employees represented by the Unions. The complaints further alleged that New Breed violated sections 8(a)(3) and (1) of the Act by refusing to hire these employees. Finally, the complaints alleged that New Breed violated sections 8(a)(5) and (1) of the Act by failing to recognize and bargain with the Unions as representatives of New Breed's unit employees, in establishing its employees' terms and conditions of employment without bargaining with the Unions, and by failing to bargain with the Unions regarding changes made to terms and conditions of employment that existed with regard to Maersk's former employees.

### A. The 10(j) Proceeding

In August 1994 the Regional Director petitioned the federal district court for a prelimi-

nary injunction pursuant to section 10(j) of the Act, 29 U.S.C. § 160(j), pending the resolution of the unfair labor practice complaints against New Breed filed by General Counsel with the NLRB.

The district court granted a temporary injunction and ordered New Breed to reinstate Maersk employees, reinstate prior working conditions, and bargain with the Unions. *Aguayo v. New Breed Leasing Corp.*, No. 94–5196 AWT (CTx) (C.D.Cal. Aug. 22, 1994). New Breed appealed. This court affirmed the grant of the temporary injunction. *Aguayo v. New Breed Leasing Corp.*, 46 F.3d 1138, 1138 (9th Cir.1995) (mem.) We found, however, that the district court had erred in ordering New Breed to restore former wages and conditions of employment for the Maersk employees, because at the injunctive phase of the proceedings this remedy was not necessary to "protect the integrity of the collective bargaining process [or] to preserve the Board's remedial power." *Id.* (citing *Miller v. California Pac. Med. Ctr.*, 19 F.3d 449, 460 (9th Cir.1994) (en banc)). Accordingly, we remanded to the district court to "reconsider the appropriate scope of that injunction." *New Breed Leasing Corp.*, 46 F.3d at 1138.

We explained, however, that "in the event the Board finds that New Breed committed an unfair labor practice by setting initial wages below the union rate, [the Board could] fashion a back pay award to remedy that harm." *Id.*

B. Prosecution of the Unfair Labor Practice Charges Before the Administrative Law Judge and the NLRB

The Board's General Counsel brought the unfair labor practice complaints against New Breed before an administrative law judge ("ALJ"). In an order dated February 14, 1995, the ALJ found that New Breed had violated sections 8(a)(1), 8(a)(3), and 8(a)(5) of the Act by failing to hire Maersk employees in order to avoid becoming a "successor employer," and by refusing to recognize and bargain with the Unions. The ALJ recommended that the NLRB order New Breed to reinstate the Maersk employees to their former positions, recognize and bargain with the

Unions, and restore the status quo ante with respect to wages and terms and conditions of employment. In addition, the ALJ recommended that New Breed be required to make the employees whole by providing back pay with interest.

In an order issued on June 30, 1995, the Board affirmed the ALJ's rulings, findings, and conclusions, and adopted the ALJ's recommended orders. *New Breed Leasing Corp.*, 317 N.L.R.B. 1011, 1995 WL 407188 (1995). The NLRB left the determination of the number of Maersk employees entitled to reinstatement and back pay to the compliance stage of its proceedings. *Id.* at n. 4.

New Breed now petitions for review of the Board's June 30 order. The Board cross-petitions for enforcement of its order.

## JURISDICTION

We have jurisdiction over the NLRB's decision and order under sections 10(e) and (f) of the Act, 29 U.S.C. § 160(e), (f).

## STANDARD OF REVIEW

■ We will enforce a decision of the NLRB if "its findings of fact are supported by substantial evidence and if the Board correctly applied the law...." *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 (9th Cir.1995) (citation and internal quotations omitted). While reviewing a NLRB decision we are mindful that "'the Board is to be accorded special deference in drawing derivative inferences from the evidence.'" *Kallmann v. NLRB*, 640 F.2d 1094, 1098 (9th Cir.1981) (quoting *NLRB v. Tischler*, 615 F.2d 509, 511 (9th Cir.1980)).

■ We defer to the Board's interpretation of the Act if it is "reasonably defensible." *NLRB v. General Truck Drivers Local 315*, 20 F.3d 1017, 1021 (9th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994) (citation and internal quotations omitted).

■ We may overturn the Board's remedial order only for a "'clear abuse of discretion.'" *California Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 308 (9th Cir.1996) (quoting *NLRB v. C.E. Wylie Constr. Co.*, 934 F.2d

234, 236 (9th Cir.1991)). "When the Board ... makes an order of restoration by way of back pay, the order should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *NLRB v. Seven–Up Bottling Co.,* 344 U.S. 344, 346–47, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1953) (quoting *Virginia Elec. & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)). Courts of appeal should not substitute their judgment for that of the Board when deciding how best to remedy the effects of unfair labor practices. *Sure–Tan Inc. v. NLRB,* 467 U.S. 883, 899, 104 S.Ct. 2803, 2812–13, 81 L.Ed.2d 732 (1984).

## DISCUSSION

New Breed challenges both the Board's findings and its remedy.

### I. Credibility Findings

■ Credibility findings by an ALJ are upheld unless they are "inherently incredible or patently unreasonable." *Retlaw Broad.,* 53 F.3d at 1006 (citations and internal quotations omitted).

■ New Breed challenges the ALJ's finding that the testimony of New Breed's operations manager Moynihan should not be credited. This challenge lacks merit. The ALJ's finding that Moynihan lacks credibility is neither inherently incredible nor patently unreasonable, and the record as a whole substantially supports the ALJ's credibility determinations. The ALJ provided substantial bases for each credibility determination, including determinations regarding Moynihan's demeanor, the coherence of his testimony, and corroboration of his testimony by other witnesses.

Nevertheless, New Breed argues that because the ALJ credited parts of Moynihan's testimony in a separate proceeding involving employee terminations-not at issue here-all of Moynihan's testimony in *this* case should be credited. Yet New Breed cites no authority to support its argument that it is "incredible and unreasonable to discredit the testimony of Moynihan" in one case while crediting his testimony in another case. Contrary to New Breed's position, we find that the ALJ could reasonably find some parts of Moynihan's testimony believable and other parts unbelievable. In the separate proceedings concerning employee terminations, the ALJ specifically noted a change in Moynihan's demeanor and a new coherence in his story.

### II. Finding of Anti–Union Animus

■ New Breed also challenges the Board's finding of anti-union animus. This court has recognized that the Board is "particularly capable of drawing inferences from the facts of a labor dispute." *Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074, 1079 (9th Cir.1977). The Board may base its inferences on either circumstantial or direct evidence. *Folkins v. NLRB,* 500 F.2d 52, 53 (9th Cir.1974) (per curiam).

The record supports the Board's determination that New Breed's hiring practices were motivated by anti-union animus. New Breed's failure to join the PMA after stating in its bid that it was considering membership, its clandestine hiring practices, and its unfulfilled promises to retain the Maersk employees support the Board's finding that New Breed's failure to hire Maersk employees was motivated by anti-union animus.

We are not persuaded by New Breed's reliance on *Industrial Catering Co.,* 224 N.L.R.B. 972, 1976 WL 7109 (1976). In *Industrial Catering,* the Board held that an employer did not violate the Act by filling vacancies according to its standard procedures where: (1) the new employer did not have a contractual relationship with the previous employer, (2) the "employing industry" had changed, and the new employer's methods of operation differed from those of the previous employer, (3) there was a complete break in operations between the time when the previous employer terminated its operations and when the new employer took over, (4) the collective bargaining agreement with the previous employer had expired, and (5) none of the predecessor's employees were employed by the new employer. *Id.* at 984.

Moreover, unlike the employer in *Industrial Catering,* New Breed is engaged in exactly the same methods of operation as Maersk, assumed operations immediately following Maersk's termination, and sought to avoid a valid, existing collective bargaining agreement. New Breed's actions are therefore distinguishable from those of the employer in *Industrial Catering.* Thus, *Industrial Catering* does not preclude the Board's finding of anti-union animus in the circumstances of this case.

## III. Adequacy of Maersk Employees and Their Failure to Apply for Positions

■ In addition to finding anti-union animus, the ALJ found that New Breed failed to prove that it had a legitimate reason for failing to hire any Maersk employees. The Board upheld the findings, which New Breed challenges. We decline the invitation to upset these findings.

New Breed argues that it would have declined to hire Maersk employees, regardless of their union affiliation, because Maersk employees were deficient and no Maersk employee applied for a position. *See Airport Parking Management v. NLRB,* 720 F.2d 610, 613 (9th Cir.1983) (holding that when a finding of impermissible motivation in hiring has been made, an employer may defend the hiring by showing that, even absent the illegal motivation, it would not have hired the predecessor's employees.) This defense lacks merit. New Breed's characterization of Maersk employees as "deficient" is belied by evidence that Moynihan, the company's operations manager, stated that he saw no problem with Maersk employees. Evidence that New Breed repeatedly assured Maersk employees of continued employment also undermines its current contention that it viewed Maersk employees as inadequate. Finally, New Breed's argument that Maersk employees failed to apply for positions is vitiated by the fact that Maersk employees were never notified of New Breed's surreptitious recruitment plan.

The evidence supports the Board's finding that New Breed would have hired Maersk employees, if not for its anti-union animus.

## IV. New Breed's Intent to Avoid Successorship

■ A new employer is deemed a successor employer if it (1) conducts essentially the same business as the former employer and (2) a majority of the new employer's work force consists of former employees or would have consisted of former employees absent a refusal to hire because of anti-union animus. *Kallmann,* 640 F.2d at 1100. An employer cannot avoid becoming a successor by unlawfully refusing to hire a predecessor's employees. *Id.* While a successor employer is not bound by the predecessor's collective bargaining agreement, *NLRB v. Burns Int'l Sec. Serv. Inc.,* 406 U.S. 272, 281–82, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972), a successor employer must nonetheless recognize and bargain with the employees' bargaining representative, *Kallmann,* 640 F.2d at 1100.

■ New Breed concedes that it conducted essentially the same business as Maersk. New Breed disputes, however, that Maersk employees would have constituted a majority of its work force absent anti-union animus. New Breed argues that it was unaware of the repercussions of becoming a successor employer and therefore could not have been motivated by a desire to avoid successorship.

"Actual motive, a state of mind, being the question, it is seldom that direct evidence will be available that is not also self-serving." *Shattuck Denn Mining Corp. v. NLRB,* 362 F.2d 466, 470 (9th Cir.1966). Therefore, in the context of a discriminatory discharge, a trier of fact may infer motive from the "total circumstances proved." *Id.* In this case, New Breed promised Maersk employees that they would be retained, but then placed anonymous job advertisements in newspapers, thereby ensuring that no Maersk employee would apply for the positions. Moreover, New Breed's executives—who had considered joining the PMA and so advised the Army-decided not to join at the same time they decided not to hire Maersk employees. The evidence supports the Board's conclusion that New Breed's pattern of conduct evinces an intent to avoid bargaining with the Unions and the Board's finding that New Breed was a successor em-

ployer required to recognize and bargain with the Unions.

## V. The Board's Remedy

### A. Law of the Case

As a threshold matter, New Breed contends that the law of the case doctrine precludes our review of the Board's remedies. New Breed points out that when the matter was first before us on an appeal from the district court's grant of a temporary injunction, we left the determination of appropriate remedies to the Board "in the event the Board finds that New Breed committed an unfair labor practice." *Aguayo v. New Breed Leasing Corp.*, 46 F.3d 1138 (9th Cir. 1995) (mem.). " 'The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.' " *U.S. v. Cote*, 51 F.3d 178, 181 (9th Cir.1995) (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993)).

The law of the case doctrine is inapplicable to the matter before us. In our previous appeal, we reviewed the district court's grant of a temporary injunction issued at the request of the Regional Director, to preserve the status quo. *Aguayo*, 46 F.3d at 1138. That appeal arose under section 10(j) of the Act, which provides: "The Board shall have power ... to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate *temporary* relief or restraining order." 29 U.S.C. § 160(j) (emphasis added). In the section 10(j) action, the district court lacked jurisdiction to rule on the merits of the unfair labor practice charges, much less to determine appropriate final relief pending a hearing on the merits before the ALJ. In a section 10(j) proceeding, the district court must only determine whether a grant of temporary relief is "just and proper." *Miller*, 19 F.3d at 457. Accordingly, our decision in the section 10(j) appeal was limited to reviewing the district court's determination of appropriate *temporary* relief, and we deferred determination of the appropriate final remedy to

the NLRB's usual adjudicatory procedures. *Aguayo*, 46 F.3d at 1138.

The Board has now determined what it regards as appropriate final remedies pursuant to section 10(c) of the Act, which provides that the Board shall "take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter." 29 U.S.C. § 160(c). Our review of the Board's section 10(c) determination of *final* remedies presents an entirely different legal question than that presented in our earlier review of the district court's section 10(j) grant of *temporary* relief.

Because we have not previously considered or decided the legal issues now before us, the law of the case doctrine is inapplicable to our review of the Board's final remedies. *Cote*, 51 F.3d at 181.

### B. The Back Pay Remedy

The Board may impose remedial orders to restore the employment situation as nearly as possible to what it would have been absent unlawful discrimination. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 188, 61 S.Ct. 845, 849–50, 85 L.Ed. 1271 (1941). Reinstatement and back pay are appropriate when a successor refuses to hire its predecessor's employees because of anti-union animus. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 177, 94 S.Ct. 414, 421, 38 L.Ed.2d 388 (1973). The grant of back pay based on pay rates in the predecessor's collective bargaining agreement may be inappropriate, however, when the successor employer shows that it *lawfully* would not have agreed to the wage scale provided by the predecessor's labor agreement, and the resulting impasse would have resulted in reduced wages. *Kallmann*, 640 F.2d at 1103; *NLRB v. Dent*, 534 F.2d 844, 847 (9th Cir. 1976).

The instant case presents a question of first impression: whether a successor employer who initially refuses to recognize and bargain with a union is required to pay back wages at union-scale rates when the successor employer fails to present evidence that it lawfully would have reduced these rates.

This question raises another. Who should bear the burden of proving what would have been the wages, terms and conditions of employment had good-faith collective bargaining between the successor employer and the union actually taken place: the employer who violated the Act, or the Board?

The Seventh Circuit has upheld the appropriateness of a status quo ante remedy when a successor employer failed to show that the conditions of employment would have changed had it initially bargained with the unions. *U.S. Marine Corp. v. NLRB*, 944 F.2d 1305, 1320 (7th Cir.1991) (en banc), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1474, 117 L.Ed.2d 618 (1992). The court in *U.S. Marine Corp.* held:

> Where all or substantially all of the predecessor's employees would have been retained but for the successor's unlawful discrimination, the successor loses the right to set initial terms and conditions of employment and violates the Act if it unilaterally alters the predecessor's terms without first consulting the union. In such cases, the Board may impose a *status quo ante* remedy to restore the situation to what it would have been absent the successor's unfair labor practice.

944 F.2d at 1320.

The Seventh Circuit then concluded that " 'restoration of the status quo ante following an unfair labor practice is prima facie appropriate.' " *Id.* at 1323 (quoting *North Carolina Coastal Motor Lines Inc.*, 219 N.L.R.B. 1009, 1010 (1975), *enforced*, 542 F.2d 637 (4th Cir.1976)). The court found that any uncertainty should be resolved against the employer who discriminates. *Id.* at 1321.

The Seventh Circuit based its decision on the sound premise that a successor employer should not benefit from its wrongdoing. *Id.* This reasoning was recently echoed by the Second Circuit in *NLRB v. Staten Island Hotel*, 101 F.3d 858 (2d Cir.1996). The court in *Staten Island Hotel* explained:

> Because it was the Company's discriminatory acts that created the uncertainty as to what terms and conditions of employment would have been agreed, we conclude that it was within the discretion of the Board to place on the Company the burden of that

uncertainty. The Board's decision to give the discrimination victims the benefit of the doubt is remedial rather than punitive.

*Id.* at 862.

We find the reasoning of the Seventh and Second Circuits persuasive. A successor employer who unlawfully refuses to hire Union employees cannot later avoid the terms of its predecessor's collective bargaining agreement by merely asserting that had it in fact engaged in collective bargaining, it would have not agreed to the terms that bound the predecessor employer. If a successor employer chooses to violate the Act, that employer must bear the burden of proving what favorable results good faith collective bargaining would have produced.

■ New Breed does not challenge the reinstatement of Maersk employees, but argues that under *Kallmann* this court should not award back pay at its predecessor's union-scale rates. New Breed misreads *Kallmann* insofar as New Breed argues that *Kallmann* held that back pay at union-scale rates is never appropriate. Rather, in *Kallmann* we found that "the facts demonstrate that [the employer] would not have agreed to union demands to pay the higher rate." *Kallmann*, 640 F.2d at 1103. We further noted that the employer's refusal to pay the higher rate "would not be unlawful." *Id.*

Unlike the employer in *Kallmann*, New Breed has presented no evidence suggesting that, had it initially bargained in good faith with the Unions, the terms of employment would have differed from the union-negotiated conditions accepted by Maersk. The record is devoid of any evidence that the employees' wages would have changed had New Breed initially recognized and bargained with the Unions. When pressed in oral argument, New Breed's counsel was unable to refer the court to any evidence that bargaining between New Breed and the Unions would have resulted in different terms.

New Breed has failed to shoulder its evidentiary burden. We therefore conclude that the Board's grant of back pay based on the predecessor's Union pay scale restores as nearly as possible the employment situation

that would have occurred absent New Breed's discrimination against the Union employees. Accordingly, we conclude that the Board's remedy is appropriate.

## CONCLUSION

For the foregoing reasons we deny review and enforce the Board's order.

O'SCANNLAIN, Circuit Judge, concurring and dissenting in part:

I respectfully dissent from Part V of the court's opinion, which concludes that the law of the case doctrine is inapplicable to our review of the National Labor Relations Board's final remedies and requires New Breed Leasing Corporation to restore the status quo ante with respect to wages and terms and conditions of employment. I concur in the remainder of the opinion without reservation.

### I

The majority concludes that the law of the case doctrine is inapplicable to our review of the National Labor Relations Board's ("NLRB" or "Board") final remedies, because "we have not previously considered or decided the legal issues now before us." *Supra*, at 1467. In *Aguayo v. New Breed Leasing Corp.*, 46 F.3d 1138, 1995 WL 7506, *1 (9th Cir.1995) (unpublished disposition), which arises out of the same facts as the instant appeal, indeed it is an earlier stage in this very case, this court reviewed the district court's grant of an interim injunction in favor of the Regional Director of Region 21 of the NLRB, pursuant to 29 U.S.C. § 160(j). The district court's injunction required New Breed Leasing Corporation ("New Breed"), *inter alia*, (1) to recognize and bargain with the unions, (2) to hire all (eleven) of the Maersk employees, and (3) to restore the Maersk employees' initial wages and conditions of employment, pending resolution of the unfair labor practice charges subject to this appeal. This court upheld the injunction, but remanded to the district court to "provide New Breed an opportunity to establish that fewer than eleven jobs would have been available for former Maersk employees

regardless of New Breed's alleged unfair labor practice and *modify the injunction to permit New Breed to set initial wages and conditions of employment.*" *Aguayo*, 1995 WL 7506 at *1 (emphasis added). We held in no uncertain terms that the district court erred with respect to its status quo ante remedies:

> The district court did err, however, in requiring New Breed to restore the former wages and conditions of employment at the Compton site. Requiring New Breed to set initial wages at the union rate is not necessary to "protect the integrity of the collective bargaining process [or] to preserve the Board's remedial power."

*Id.* (internal citation omitted). I am at a loss to understand how the majority can so easily wipe the procedural slate clean and ignore this court's earlier holding on the same issue and facts.

The law of the case doctrine indeed precludes our review of the Board's remedies. *See, e.g., Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir.), *cert. denied*, 510 U.S. 815, 114 S.Ct. 64, 126 L.Ed.2d 34 (1993) ("Undeniably, the decision of the circuit court in a prior appeal must be followed in all subsequent proceedings in the same case under the law of the case doctrine."); *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.1989) ("Under the law of the case doctrine a decision of the court in a prior appeal must be followed in all subsequent proceedings in the same case."). The majority's decision on the Board's remedies simply does not square with this court's earlier disposition of the case.

### II

Assuming arguendo that we are not precluded from reviewing the Board's remedies under the law of the case doctrine, the majority nonetheless errs in upholding the Board's status quo ante remedies. A successor employer violates section 8(a) of the National Labor Relations Act ("NLRA" or "Act") if it makes discriminatory hiring decisions and refuses to employ a predecessor's employees in order to avoid this obligation. 28 U.S.C. § 158(a). Substantial evidence supports the Board's conclusion that New

Breed was (i) a successor employer who (ii) refused to hire its predecessor's employees because of their union affiliation and (iii) refused to recognize and bargain with the unions representing the employees. Because New Breed violated section 8(a)(3) and (1) of the Act, the Board may impose a *remedial* remedy to restore the situation to what it would have been absent the violation. The Board, however, may *not* impose a remedy that is punitive in nature. New Breed properly maintains that the Board's order requiring it to restore the wages, hours, and working conditions of the Maersk employees is punitive.

The Board's order reads, in relevant part:

I shall order Respondent to offer the former Maersk unit employees in writing immediate, full, and unconditional employment in the unit positions they occupied when employed by Maersk, terminating unit employees not formerly employed by Maersk as necessary, if such positions no longer exist, they shall be offered substantially equivalent positions, without prejudice to their seniority and other rights and privileges they would have enjoyed if initially hired at the commencement of Respondents operations, and to make them whole for any loss of earnings and benefits....

I shall also order Respondent, on the Unions' request, to restore the status quo ante with respect to each unit, to rescind the unilateral changes, including all initial terms and conditions of employment different from those in place under Maersk's agreement with the Unions, in unit employees' wages, hours, and terms and conditions of employment implemented on and before April 1, 1994, and subsequently; and to make all affected unit employees whole for losses they incurred by virtue of its unilateral changes in their wages, fringe benefits, and other terms and conditions of employment....

The majority's decision is contrary to the weight of authority construing the Board's remedial power.

### A

First, the majority's holding is not supported by the United States Supreme Court's decision in *NLRB v. Burns Int'l Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), where the Court first examined whether a successor employer is bound by its predecessor's collective bargaining agreement. The Supreme Court held that requiring a successor to accept its predecessor's agreement goes beyond remediation, because the successor's only obligation is to bargain with the predecessor's employees. The "parties need not make any concessions as a result of Government compulsion and ... they are free from having contract provisions imposed upon them against their will.... [H]olding ... [the] employer bound to the substantive terms of an old collective-bargaining contract may result in serious inequities." *Burns*, 406 U.S. at 287, 92 S.Ct. at 1582. The Supreme Court carved out the "perfectly clear" exception to its rule when it is perfectly clear that all or substantially all of the predecessor's employees will be rehired. The exception only imposes a duty on the successor to "consult" with the union before it sets the initial terms and conditions of employment. The duty to consult however does not imply an obligation to accept the old terms of employment. *See also Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 36–42, 107 S.Ct. 2225, 2232–35, 96 L.Ed.2d 22 (1987) (discussing and reaffirming *Burns*).

### B

Second, this court has consistently held that a successor employer is free to set the initial terms and conditions of employment. *New England Mechanical, Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1342 (9th Cir.1990); *Sheet Metal Workers Int'l Ass'n Local No. 359 v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 651 (9th Cir. 1988); *NLRB v. World Evangelism, Inc.*, 656 F.2d 1349, 1355 (9th Cir.1981); *Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir.1981); *NLRB v. Edjo, Inc.*, 631 F.2d 604, 606 (9th Cir.1980); *NLRB v. Dent*, 534 F.2d 844, 847 (9th Cir.1976). The majority seeks to avoid the application of these precedents by reframing the issue into an issue of first impression. However, its reasoning is not persuasive because our circuit has already determined that a successor employer has a

duty to consult with the union before unilaterally changing the terms of employment but has no obligation to accept its predecessor's labor agreement.

Under *Kallmann,* in particular, New Breed should not be required to restore the wages, hours, and working conditions of the Maersk employees. This court held in no uncertain terms that a successor has no obligation to accept its predecessor's labor agreement and reinstate the predecessor's terms and conditions of employment. Contrary to the majority's pronouncement, *Kallmann* states that such an order indeed constitutes a penalty.

> Nevertheless, we disagree with the extent of the remedial order. Even though under the facts of this case Kallmann had a duty to consult with the union before unilaterally charging the terms of employment, *as a successor employer he had no obligation to accept his predecessor's labor agreement.* The effect of the Board's order is to force Kallmann to abide by the terms of his predecessor's contract with the employees for the entire period of time Kallmann has owned the enterprise.

*Id.* (citations omitted) (emphasis added). The majority's attempt at distinguishing *Kallmann* on these facts is unavailing.

### C

And finally, the Second, Fourth and District of Columbia Circuits have held that successors may set their own terms and conditions. *Saks & Co. v. NLRB,* 634 F.2d 681, 687–88 (2d Cir.1980); *Nazareth Reg'l High Sch. v. NLRB,* 549 F.2d 873, 881–82 (2d Cir.1977);[1] *NLRB v. Spruce Up Corp.,* 529 F.2d 516 (4th Cir.1975); *International Ass'n of Machinists & Aerospace Workers v. NLRB,* 595 F.2d 664, 672–76 (D.C.Cir.1978). The majority, however, concludes that the Seventh Circuit's reasoning in *U.S. Marine Corp. v. NLRB,* 944 F.2d 1305 (7th Cir.1991) (enbanc) is persuasive and should be adopted in the instant case. The Seventh Circuit

held that where a successor employer illegally refused to bargain with a predecessor's union, the Board's order to reinstate ·the contract in effect under the predecessor was a proper status quo ante remedy. It concluded that this was appropriate because, under the "perfectly clear" exception delineated in *Burns,* a successor that would have retained all or substantially all of its predecessor's employees, absent its discriminatory hiring practice, "loses the right to set the initial terms and conditions of employment and violates the Act if it unilaterally alters the predecessor's terms without first consulting the union." *Id.* at 1320.

In reaching its decision, the court split six to five. I cast my lot with the Seventh Circuit dissenters because (i) the majority's interpretation of the "perfectly clear" exception is inconsistent with the rationale in *Burns;* and (ii) the status quo ante remedy contravenes certain policies embedded within the NLRA regarding successor ownership. In his dissent, Judge Easterbrook properly argued that a bona fide sale of a business enables the successor to impose its own terms. He emphasized that the forfeiture of a successor's privilege to set the initial terms and conditions of employment is contrary to such policies as freedom of contract and the need to resuscitate ailing business.

> They have received wages from U.S. Marine to compensate them for the elimination of the antique manning tables and work rules. Now they receive a third salve, in back pay, for the loss of the work rules they enjoyed when Chrysler ran the plant, and U.S. Marine must use those rules from now on. None of this is remedial, and as a penalty it is not only too high but also interferes with the future operation of the plant. How much cleaner if the Board could levy a hefty fine, distribute the money to the workers, and be done. Instead, the Board's pretense of "remedy" has produced an order that may make profitable production impossible. By approving this masquerade we preserve

---

1. The majority relies on *NLRB v. Staten Island Hotel Ltd. Partnership,* 101 F.3d 858 (2d Cir. 1996), for the proposition that imposing a predecessor's employment agreement is remedial rather than punitive. However, *Staten Island* is distinguishable: "[T]he requirement that the Company pay former employees at the prior

rates was plainly intended to be remedial, for it is *temporally limited:* (the Board's order requires payment at the prior rates only until the Company negotiates in good faith with the Union, either to agreement or to impasse.") *Id.* at 862 (emphasis added).

featherbedding, increase the risks of taking over foundering firms, and frustrate the revival of aging plants. Neither American workers nor American consumers will welcome this consequence.

*Id.* at 1331.

Here, the remedy for discriminating against the eleven Maersk employees would be an order to hire them. It goes beyond mere remediation to impose the prior contract because New Breed would have had the right to set its own terms and conditions had it hired those employees initially. Because New Breed violated its obligation as a successor to bargain, the proper remedy is a bargaining order, not reinstatement of the contract that existed under Maersk.

### III

Because the majority's decision is contrary to the weight of authority construing both the law of the case doctrine and the Board's remedial power, I dissent from that part of the court's opinion which orders the status quo ante remedy.