ALLIED INDUSTRIES EMPLOYEES, TEAMSTERS, LOCAL 481, INTER-NATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, Petitioner,

Bridgestone/Firestone, Inc., Intervenor,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Bridgestone/Firestone, Inc., Petitioner,

Allied Industries Employees, Teamsters Local 481 International Brotherhood, Intervenor,

v.

National Labor Relations Board, Respondent.

National Labor Relations Board, Petitioner,

v.

Bridgestone/Firestone, Inc., Respondent.

Nos. 00–71392, 01–70022, 01–70086. NLRB No. 21–CA–31471.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2002.

Decided Sept. 17, 2002.

Before T.G. NELSON, PAEZ, and TALLMAN, Circuit Judges.

MEMORANDUM *

We affirm the decision of the National Labor Relations Board (NLRB) in all re-spects except the NLRB's conclusion that Bridgestone/Firestone, Inc. (BFS) engaged in solicitation in the three-store unit, which we reverse. We grant in part the NLRB's petition for enforcement.

## I. THE COMPLAINT AMENDMENTS

### A. Section 10(b)

■ Section 10(b)'s six-month statute of limitations applies to the period between the occurrence of the alleged unfair labor practice and the filing of the charge, not the filing of the complaint.[1] Thus, amending the complaint did not violate the limitations period.[2] However, Section 10(b) circumscribes the NLRB's ability to amend complaints in a different respect: the statute authorizes the NLRB to "issue[ ] complaints only when charges have been filed and not on its own initiative."[3] Thus, "[t]he instant case does not involve an untimely charge but merely whether the [Union's] charge[s] ... [are] sufficient"[4] to support the complaint amendments.

In this circuit, the original charge and the complaint amendments "need be close enough only to negate the possibility that the Board is proceeding on its own initiative rather than pursuant to a charge ."[5]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Section 10(b) of the National Labor Relations Act provides that "no *complaint* shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the *charge* with the Board." 29 U.S.C. § 160(b) (emphasis added); *see also Hospital & Serv. Employees Union, Local 399 v. NLRB,* 798 F.2d 1245, 1249 (9th Cir.1986) (distinguishing between the charge and the complaint for purposes of Section 10(b)); *NLRB v. Fant Milling Co.,* 360 U.S. 301, 307, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959) (same).

2. Indeed, a "complaint may be amended ... at any time prior to the issuance of an order," 29 U.S.C. § 160(b), even after the close of evidence, simply "to conform with the proof." *Clear Pine Mouldings, Inc. v. NLRB,* 632 F.2d 721, 728 (9th Cir.1980).

3. *Hospital & Serv. Employees Union,* 798 F.2d at 1249; *see also* 29 U.S.C. § 160(b) (providing that the NLRB may issue a complaint when an unfair labor practice has been charged).

4. *NLRB v. Inland Empire Meat Co.,* 611 F.2d 1235, 1237 (9th Cir.1979).

5. *Id.* at 1238 (internal quotation marks omitted).

Similarly, the NLRB has determined that complaint amendments may relate back to the original charges if they (1) "involve the same legal theory," (2) "arise from the same factual circumstances," and, in some cases, if (3) "a respondent would raise similar defenses to both." [6]

The Union originally charged that BFS unlawfully refused to bargain. BFS refused to bargain because it concluded that a majority of employees had signed union decertification petitions. Thus, the Union's charges inevitably raised the issue of the validity of the petitions.

The solicitation allegations directly challenged the validity of the petitions. The direct dealing allegations indirectly challenged the petitions' validity because the allegations implied that BFS fostered the employee dissatisfaction that was at the root of the petition drive. Thus, the solicitation and direct dealing allegations arose from the same factual circumstances and involved the same legal theory as the original charges. Similarly, the legal and factual issues raised by the complaint amendments were close enough to those raised by the original charges to negate the possibility that the NLRB was acting on its own initiative.

The fact that BFS could have raised different defenses to the amendment allegations than to the original charges is irrelevant. The NLRB's test primarily emphasizes the factual connection between the charge and the complaint.[7] Thus, the "same defenses" prong need not be applied if the factual and legal similarity prongs settle the matter.[8] Even when the "same defenses" prong does apply, the inquiry is whether the charge and complaint allegations "allege the same unlawful object," [9] not whether there are legal distinctions between the various defenses that might be raised.

The charge and complaint allegations are sufficiently similar, factually and legally, to settle the question of whether amendments to the complaint relate back to the original charges. Both the charge and the complaint ultimately allege the same object, an unlawful refusal to bargain. Accordingly, the assertion that BFS would mount different legal defenses to the amendment allegations than to the original charges does not preclude a finding that the original charges and the complaint amendments are closely related.

## B. Due Process

The only due process issue is whether the complaint amendments were fully and fairly litigated because "[e]ven when the complaint is devoid of notice of the unfair labor practice, due process is satisfied by full litigation of the issues." [10]

### 1. *Direct Dealing.*

BFS elicited Garcia's testimony about BFS's decision to seek employee authorizations before releasing the employees' home addresses to the Union—the conduct that formed the basis of the direct dealing allegations. BFS therefore cannot claim

---

**6.** *Nickles Bakery of Indiana, Inc.,* 296 NLRB 927, 928 (1989).

**7.** *See id.* (explaining that the "closely related" test requires "that a complaint allegation be factually related to the allegation in the underlying charge" and referring with approval to previous NLRB cases requiring a "factual nexus" between the charge and the complaint).

**8.** *See id.* (stating that the NLRB "will" look to legal and factual similarity but only "may" look to similarity of defenses).

**9.** *Id.* n. 6.

**10.** *NLRB v. Int'l Bhd. of Elec. Workers,* 827 F.2d 530, 534 (9th Cir.1987).

that the evidence was unfairly introduced.[11] In addition, BFS was afforded an opportunity for redirect after the Union and the administrative law judge (ALJ) cross-examined Garcia about the employee authorizations decision, but declined.[12] BFS also declined an opportunity to present additional evidence—including exculpatory evidence—at the end of the hearing.[13] The direct dealing allegations were therefore fully and fairly litigated within the meaning of this court's precedents.

### 2. *Solicitation.*

Four witnesses—including one called by BFS—testified that Gallo and Hook urged employees to sign the petition or to decertify the Union, discussed the relative benefits of union versus non-union shops, or discussed what benefits would be available if the employees rejected the Union. Three of these witnesses testified primarily, if not exclusively, to what Gallo and Hook said and did during the store visits. In other words, the hearing transcript is "replete with evidence"[14] of solicitation.

BFS did not object to the adverse testimony and cross-examined the witnesses, with the exception of Foster, a witness

BFS called and expressly declined to examine on redirect. BFS also called two witnesses to testify that Gallo and Hook said and did nothing improper during the visits. Finally, BFS declined to present additional evidence when afforded the opportunity, and it is difficult to imagine what other exculpatory evidence BFS could have introduced. Accordingly, the solicitation allegations were fully and fairly litigated.

BFS's argument that it, like the employer in *Presto Casting Co. v. NLRB*,[15] was taken off-guard and "was not prepared at the hearing to come forward"[16] with evidence to defend itself, lacks merit. BFS called two witnesses to testify that there had been no solicitation and had a third witness ready to so testify. Thus, BFS was prepared to come forward with evidence regarding the solicitation allegations. In addition, as previously discussed, the amended allegations in this case were factually and legally intertwined with the original unfair labor practice charges, unlike those in *Presto.*[17] Accordingly, BFS cannot credibly claim to have been surprised or taken off-guard by the amended allegations.

---

**11.** Cf. *Indus. Technical & Prof'l Employees Div. v. NLRB*, 683 F.2d 305, 308 (9th Cir. 1982) (finding an issue fully and fairly litigated in part because there was no objection to the introduction of the crucial evidence); *NLRB v. Int'l Ass'n. of Bridge, Structural & Ornamental Iron Workers, Local 433*, 600 F.2d 770, 776 (9th Cir.1979) (same).

**12.** See *George C. Foss Co. v. NLRB*, 752 F.2d 1407, 1412 (9th Cir.1985) (finding an issue fully and fairly litigated in part because there was an opportunity for cross-examination); *Indus. Technical & Prof'l Employees*, 683 F.2d at 308 (same); *NLRB v. Carilli*, 648 F.2d 1206, 1211 (9th Cir.1981) (same); Redirect afforded BFS an opportunity to negate or ameliorate the impact of adverse evidence analogous to the opportunity for cross-examination in the cited cases.

**13.** See *George C. Foss Co.*, 752 F.2d at 1412 (finding an issue fully and fairly litigated in part because there was no exculpatory evidence that could have been introduced).

**14.** *Id.* at 1412 (internal quotation marks and citation omitted).

**15.** 708 F.2d 495 (9th Cir.1983).

**16.** *Id.* at 498.

**17.** In *Presto*, the original allegations of unfair labor practices connected with a strike were factually and legally distinct from a subsequent allegation that the employer failed to reinstate several strikers after the strike had ended. *See id.* at 497–98.

## II. THE THREE–STORE UNIT

█ We reverse the NLRB's conclusion that BFS engaged in solicitation in the three-store unit. Gallo and Hook never visited the stores in the three-store unit. In addition, the ALJ's conclusions [18] that the two bargaining units shared a "total community of interests" and that there was a "causal relationship" between the withdrawal of union recognition in the ten-store unit and the circulation of petitions in the three-store unit lack record support. If anything, the record indicates that a three-store unit employee started the three-store unit petition drive independently, out of his own dissatisfaction with the Union. Finally, the ALJ improperly shifted the burden by citing BFS's failure to present evidence that solicitation of employees in the ten-store unit did not taint BFS's withdrawal of recognition in the three-store unit.[19] Thus, the ALJ's conclusion that BFS engaged in solicitation in the three-store unit was not supported by substantial evidence and was based on an incorrect application of the law.[20]

[4] However, we affirm the NLRB regarding direct dealing in the three-store unit. BFS implemented the employee authorization requirement in the three-store unit. The NLRB concluded that the requirement tended to increase employee disaffection with the Union, a reasonable inference supported by the record.[21] Finally, the fact that decertification petitions were circulating in the three-store unit was not a sufficient basis for Gill to delay in responding to the Union's information request.[22] Substantial evidence therefore supports the NLRB's conclusion that BFS engaged in direct dealing in the three-store unit.

## III. THE BARGAINING ORDER

[5] We affirm the bargaining order except as it relates to solicitation in the three-store unit. A bargaining order is appropriate where the Union once enjoyed majority support and an alternative remedy—such as a cease and desist order or an election—"would in effect be rewarding the employer and allowing him 'to profit from [his] own wrongful refusal to bargain.'"[23] Such is the case here. The

**18.** The NLRB affirmed the ALJ's decision in full but did not address or mention the ALJ's specific conclusion that BFS engaged in solicitation in the three-store unit. We therefore assume the NLRB adopted the ALJ's reasoning on this issue. *Cf. Dickey v. Lewis,* 859 F.2d 1365, 1368 (9th Cir.1988) ("The most logical inference to be drawn from the Appellate Division's unexplained affirmance is that the court accepted not only the judgment but also the reasoning of the trial court.") (internal quotation marks omitted).

**19.** The General Counsel has the burden of proving an unfair labor practice. *NLRB v. Int'l Bhd. of Elec. Workers,* 301 F.2d 824, 827 (9th Cir.1962).

**20.** *See NLRB v. Calkins,* 187 F.3d 1080, 1085 (9th Cir.1999) ("Decisions of the NLRB will be upheld on appeal if *its findings of fact are supported by substantial evidence and if the agency correctly applied the law"), cert. de-*

*nied,* 529 U.S. 1098, 120 S.Ct. 1831, 146 L.Ed.2d 776 (2000).

**21.** *See New Breed Leasing Corp. v. NLRB,* 111 F.3d 1460, 1464 (9th Cir.1997) ("the Board is to be accorded special deference in drawing derivative inferences from the evidence") (internal quotation marks omitted).

**22.** *See N. Montana Health Care Ctr. v. NLRB,* 178 F.3d 1089, 1097 (9th Cir.1999) ("An employer asserting a good faith doubt [about a union's majority support] must provide objective evidence such as the expression of dissatisfaction with the union by a significant minority of union members"); *NLRB v. Wilder Constr. Co.,* 804 F.2d 1122, 1125 (9th Cir. 1986) (stating that such evidence must be clear, cogent and convincing).

**23.** *NLRB v. Buckley Broad. Corp.,* 891 F.2d 230, 234 (9th Cir.1989), quoting *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 610, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

Union had majority support until the collective bargaining agreements (CBAs) expired.[24] BFS based its withdrawal of Union recognition and refusal to bargain on petitions tainted by BFS's unfair labor practices.[25] Thus, NLRB's bargaining order prevents BFS from profiting from its wrongful refusal to bargain. Accordingly, the NLRB did not abuse its discretion in choosing to impose a bargaining order.[26]

However, because we have concluded that the allegation of solicitation in the three-store unit was not supported by substantial evidence, we grant enforcement of the bargaining order only in part. We deny enforcement of the order insofar as it implies or assumes that BFS engaged in solicitation in the three-store unit or requires BFS to take any steps to remedy or address the alleged solicitation in the three-store unit. We grant enforcement of the order in all other respects.

## IV. CHECKOFF DUES

The NLRB properly found the complaint did not allege a failure to make check-off dues payments, thus the issue was not properly litigated at the hearing.[27] The NLRB's decision to refuse the Union's checkoff dues request is therefore supported by substantial evidence.[28]

AFFIRMED IN PART, REVERSED IN PART, ENFORCEMENT GRANTED IN PART.

**24.** See Gardner Mech. Servs., Inc. v. NLRB, 115 F.3d 636, 640 (9th Cir.1997) ("The presumption of [Union] majority support is also irrebuttable during the term of a collective-bargaining agreement.").

**25.** The NLRB properly found that the unfair labor practices were a factor in BFS's withdrawal of recognition of the Union. See Master Slack Corp., 271 NLRB 78, 84 (1984).

**26.** We review the NLRB's choice of a remedy for an unfair labor practice only for an abuse of discretion. See Sever v. NLRB, 231 F.3d 1156, 1165 (9th Cir.2000).

Costs are awarded to the National Labor Relations Board and Allied Industries Employees.

**27.** See ER 1–A at 4 n. 6.

**28.** See Sullivan Bros. Printers, Inc. v. NLRB, 99 F.3d 1217, 1230–31 (1st Cir.1996) (finding that the NLRB relied on substantial evidence and properly applied the law in refusing to order employer to honor a dues checkoff provision after the NLRB determined that the contract had expired).

