233 F.3d 1176 (9th Cir. 2000)
 NATIONAL LABOR RELATIONS BOARD, Petitioner, and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AMALGAMATED LOCAL UNION No. 509, AFL-CIO, Petitioner-Intervenor,
v.
ADVANCED STRETCHFORMING INTERNATIONAL, INC., Respondent.
 No. 97-71047
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted April 13, 1999
Filed April 4, 2000
Amended Opinion Filed November 22, 2000
 
 Sharon I. Block, National Labor Relations Board, Washington, D.C., for the petitioner.
 Henry M. Willis, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, California, for the petitioner-intervenor.
 Larry Walraven, O'Melveny & Myers, Newport Beach, California, for the respondent.
 On Application for Enforcement of an Order of the National Labor Relations Board. NLRB No. 21-CA-29104
 Before: Robert Boochever, Diarmuid F. O'Scannlain and A. Wallace Tashima, Circuit Judges.
 
 
 1
 Opinion by Judge BOOCHEVER;
 
 
 2
 Dissent by Judge O'Scannlain.
 
 ORDER
 
 3
 Both Advanced Stretchforming International, Inc. ("ASI") and the National Labor Relations Board (the "Board") filed petitions for rehearing and rehearing en banc . The panel requested a response to these petitions and that response was filed and circulated to panel members and to all active judges. A judge of the court called for a vote on whether the case should be reheard en banc, but voting was suspended on the panel's indication that its opinion would be amended.
 
 
 4
 By unanimous vote, the panel hereby GRANTS ASI's petition for rehearing and GRANTS the Board's petition for rehearing. Accordingly, the original opinions filed on April 4, 2000 as NLRB v. Advanced Stretchforming Int'l, Inc., 208 F.3d 801 (9th Cir. 2000), are hereby AMENDED.
 
 OPINION
 BOOCHEVER, Circuit Judge:
 
 5
 We decide whether a successor employer forfeits its unilateral right to set initial terms of employment when it announces to the former employees of its unionized predecessor that there will be no union at the new company should they apply to work there.
 
 
 6
 * Advanced Stretchforming International, Inc., ("ASI") manufactures structural body components used in the aerospace industry at a facility in Gardena, California. Prior to ASI's tenure, Aero Stretch, Inc. ("Aero") engaged in the same operations at the same site. Aero and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 509 ("UAW" or "Union") entered into a collective bargaining agreement ("CBA") for production and maintenance employees effective August 19, 1991 through August 19, 1994.
 
 
 7
 On June 11, 1992, Aero filed for bankruptcy under Chapter 11 of the Bankruptcy Act. Aero continued to operate, but gradually laid off employees. UAW representative Duane LaMothe contacted Aero's management over the ensuing months to check on Aero's bankruptcy status. At a November 19, 1992, hearing, the bankruptcy court converted Aero's bankruptcy to a Chapter 7 case and auctioned its assets.
 
 
 8
 Stephen Brown submitted the successful bid. As a condition of the sale, the bankruptcy judge ordered Aero to cease operations and to terminate all employees by November 30. On November 30, Brown called Aero's Manufacturing Director, Eric Cunningham, and told him to inform Aero employees that they could report to the plant the next day to interview for positions with ASI, which Brown incorporated on December 1. Cunningham called a meeting of Aero's employees and informed them that the plant had been purchased, and that all employees would be terminated at the end of the day, but that they should report to the plant the next day to interview for positions if they were interested in working for ASI. Two employees present at the meeting, and LaMothe, who was also present at the meeting, testified that Cunningham told the employees that there would be "no union, no seniority, no nothing" at ASI. Cunningham denied making such a statement, but testified that at some point he told the employees that ASI would not assume Aero's CBA.
 
 
 9
 On December 1, Brown interviewed and hired Cunningham as ASI's general manager. Brown and Cunningham then interviewed Aero's former employees who came to the plant that day. Brown required each applicant to sign the following statement:
 
 
 10
 I UNDERSTAND THAT I WILL BE WORKING UNDER NEW TERMS AND CONDITIONS WHICH IS NOT A CONTRACT AND IS SUB JECT TO CHANGE.
 
 
 11
 NEW COMPANY IS NOT ASSUMING COLLEC TIVE BARGAINING AGREEMENT.
 
 
 12
 YOU MAY BE EMPLOYED BY NEW COM PANY ON AN AT WILL BASIS.
 
 
 13
 DETAILED LIST OF TERMS AND CONDITIONS IS TO FOLLOW.
 
 
 14
 During the interviews, Brown informed each applicant that the new terms of employment would include different wages, no 401(k) plan, less vacation time, fewer holidays, no medical or dental benefits and at-will employment.
 
 
 15
 ASI hired eight of the seventeen former Aero production and maintenance employees. Four were hired at Aero's hourly rate; two received more and two received less.
 
 
 16
 UAW sent certified letters to ASI on December 3, 7, and 11, demanding that ASI recognize the Union as its employees' bargaining representative. UAW filed an unfair labor practice charge against ASI on December 11. On December 14, ASI conducted a poll of its employees regarding their desire for continued union representation. The employees voted against union representation. That same day, ASI's counsel wrote the union a letter advising that ASI did not recognize the UAW as the representative of its employees. On April 30, 1993, the National Labor Relations Board ("NLRB" or "Board") issued a complaint and notice of hearing against ASI.
 
 
 17
 After conducting a hearing, an Administrative Law Judge ("ALJ") found that ASI had violated sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. SS 158(a)(1), (5), by (1) making the "no union" statement at the November 30 meeting, (2) improperly polling its employees regarding union representation on December 14, and (3) refusing to recognize and to bargain with UAW, as ASI was required to do as an alleged "successor" employer to Aero. The ALJ, however, rejected the General Counsel's claim that ASI had further violated the NLRA by setting the initial terms of employment on December 1. The ALJ reasoned that under NLRB v. Burns Int'l Sec. Serv., Inc., 406 U.S. 272 (1972), ASI had the right to establish initial employment terms when it hired Aero's former employees.
 
 
 18
 The NLRB's General Counsel appealed the ALJ's decision that ASI did not violate the NLRA by setting the initial hiring terms, and the Board reversed. The Board reasoned that ASI had forfeited its right to set the initial terms of employment because it unlawfully "block[ed] the process by which the obligations and rights" of a successor are incurred when it made the "no union" statement. Advanced Stretch-forming Int'l, Inc., 323 N.L.R.B. 529, 530-31 (1997). Thus, the Board held that ASI unlawfully and unilaterally changed the employment terms without first bargaining with the union. Id. at 531.
 
 
 19
 Based on its conclusions, the Board adopted the ALJ's recommended order, but added to it, directing ASI,"in order to remedy [the] unlawful unilateral changes," to
 
 
 20
 rescind any changes in employees' terms and condi tions of employment unilaterally effectuated and to make the employees whole by remitting all wages and benefits that would have been paid absent [ASI's] unlawful conduct, until [ASI] negotiates in good faith with the Union to agreement or to impasse.
 
 
 21
 Id.
 
 
 22
 The Board timely applied to this court for enforcement of its order. ASI does not challenge the Board's rulings on the "no union" statement, the union representation poll and the refusal to bargain with UAW. Accordingly, the Board's "finding of those unfair labor practices violations must be taken as established." Idaho Falls Consol. Hosp., Inc. v. NLRB, 731 F.2d 1384, 1386 (9th Cir. 1984). We grant summary enforcement of the Board's order with respect to those findings. See Gardner Mech. Serv., Inc. v. NLRB, 115 F.3d 636, 643 n.2 (9th Cir. 1997).[1] ASI does dispute the Board's determination that it committed separate violations of NLRA sections 8(a)(1) and (5) by unilaterally changing the terms of its carryover workforce's employment.
 
 II
 
 23
 When ASI employed a majority of its workforce from Aero's former employees and carried on Aero's business essentially unchanged, ASI became a "successor " employer to Aero. See Kallman v. NLRB, 640 F.2d 1094, 1100 (9th Cir. 1981). A successor is obligated to recognize and bargain with the representative of its predecessor's former employees. See NLRB v. Burns Int'l Sec. Serv., Inc., 406 U.S. 272, 280-81 (1972). Ordinarily, however, a successor is not bound by its predecessor's collective bargaining agreement, and is free to set the initial terms of employment for its workers without first consulting with their union. See Burns, 406 U.S. at 29495. Nevertheless, the Board found that ASI "forfeited" its right to set initial terms without first bargaining when it made the statement that there would be "no union" at the new company.[2]
 
 
 24
 The Board "often possesses a degree of legal leeway when it interprets its governing statute, particularly where Congress likely intended an understanding of labor relations to guide the Act's application." NLRB v. Town & Country Elec., Inc., 516 U.S. 85, 89-90 (1995). We defer to the Board's interpretation of the NLRA if it is "reasonable and not precluded by Supreme Court precedent." Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1134 (9th Cir. 1988) (en banc).
 
 
 25
 The forfeiture doctrine deprives a successor of its rights under Burns when the successor has failed to fulfill its corresponding Burns obligations. The Board has explained:
 
 
 26
 The fundamental premise for the forfeiture doctrine is that it would be contrary to statutory policy to con fer Burns rights on an employer that has not con ducted itself like a lawful Burns successor because it has unlawfully blocked the process by which the obligations and rights of such a successor are incurred . . . . In other words, the Burns right to set initial terms and conditions of employment must be understood in the context of a successor employer that will recognize the affected unit employees' collective-bargaining representative and enter into good-faith negotiations with that union about those terms and conditions.
 
 
 27
 Advanced Stretchforming Int'l, Inc., 323 N.L.R.B. 529, 530 (quotation marks, citation omitted).
 
 
 28
 Courts have approved the Board's application of the forfeiture doctrine in instances where an employer seeks to avoid obligations of successorship by strategically refusing to hire its predecessor's employees based on their union membership. See, e.g., Kallman, 640 F.2d at 1102-03; Capital Cleaning Contractors, Inc. v. NLRB, 147 F.3d 999, 1008 (D.C. Cir. 1998); NLRB v. Horizons Hotel Corp., 49 F.3d 795, 806 (1st Cir. 1995); U.S. Marine Corp. v. NLRB, 944 F.2d 1305, 1320 (7th Cir. 1991). In Kallman, for example, we enforced the Board's finding that a successor forfeited its right to set initial terms of employment when it refused to hire a certain number of its predecessor's union employees in order to avoid application of a rule that would have required it to bargain before setting terms.
 
 
 29
 The rule whose application the successor sought to avoid in Kallman was the so-called "perfectly-clear" exception to the ordinary rule of Burns. Under this exception, a successor must bargain before setting terms when it hires all or substantially all of its initial workforce from the ranks of a represented bargaining unit of its predecessor, it being then "perfectly clear" that a carryover majority desires representation. See Kallman, 640 F.2d at 1102-03; Bellingham Frozen Food, Inc. v. NLRB, 626 F.2d 674, 678-79 (9th Cir. 1980) ("When it is `perfectly clear' that the employer intends to hire a majority of his workforce in a unit represented by a union from the ranks of his predecessor, his duty to bargain with the union commences immediately."). Had the successor in Kallman not discriminated against its predecessor's unionized employees, the "perfectly clear" exception would have required it to bargain before setting initial terms. We therefore found it appropriate to treat the successor as if the "perfectly clear" exception had applied, as it would have but for the successor's anti-union conduct. Kallman, 640 F.2d at 1102-03.
 
 
 30
 The question before us is whether ASI's "no union" statement "blocked the process by which the obligations of a successor are incurred" in a manner similar to the discriminatory hiring practices to which the forfeiture doctrine previously has been applied. We believe that it did. In Kallman, the successor employer's discriminatory hiring practices prevented the initial workforce from being constituted from the ranks of the predecessor, preempting the employees' right to bargain through their union prior to imposition of initial terms. Here, no discriminatory hiring practices prevented ASI's "perfectly clear" obligation from arising.[3] Instead, the "no union" statement chilled the invocation of that obligation once it had arisen. Having been informed when invited to apply for work with ASI that there would be no union at the new company, Aero's workers may well have believed that employment with ASI was contingent on abstaining from union representation, including insistence on the right to bargain before ASI imposed initial terms. It was not unreasonable for the Board to conclude, as a practical matter, that the "no union" statement blocked the process by which ASI's obligations as a successor were incurred.
 
 III
 
 31
 To remedy ASI's failure to consult with the Union before imposing terms, the Board ordered ASI to recognize the Union, and to pay back wages and benefits under the CBA from the time of the violation until ASI negotiated in good faith to a bargain or impasse. Though a successor may forfeit its right to set initial terms unilaterally when it engages in improper activities to evade the obligations of successorship, the successor has "no obligation to accept his predecessor's labor agreement." Kallman, 640 F.2d at 1103. Consequently, when employees are awarded back pay running from the time the successor acquires the business until it finally bargains to an agreement or an impasse pursuant to a duty to bargain imposed after lengthy proceedings, employees may receive far more than they would have if the violation had never occurred. Thus we have held that "to the extent that a back pay order requires payment at the higher rate for the entire period of ownership, it acts as a penalty." Id. Rather, "an appropriate back pay remedy cannot require [the successor] to pay the higher rate beyond a period allowing for a reasonable time of bargaining." Id.
 
 
 32
 This limitation on the period for which back pay may be awarded applies, however, only when it is clear that the successor "lawfully would not have agreed to the wage scale provided by the predecessor's labor agreement, and the resulting impasse would have resulted in reduced wages. " New Breed Leasing Corp. v. NLRB, 111 F.3d 1460, 1467 (9th Cir. 1997). Whether bargaining would have resulted in impasse had the violation not occurred will often be a matter of some uncertainty. In New Breed we held that any such uncertainty "should be resolved against the employer who discriminates," and we therefore placed the burden of persuasion on the successor to show that it would not have agreed to the higher wages. Id. at 1468.
 
 
 33
 In reaching this conclusion, we were persuaded by the Seventh Circuit's reasoning in U.S. Marine, 944 F.2d at 1321, that a successor should not benefit from an ambiguity that results from its own wrongdoing. Thus in New Breed, where the successor "failed to shoulder its evidentiary burden," we found that "the Board's grant of back pay based on the predecessor Union's pay scale restores as nearly as possible the employment situation that would have occurred absent " the unfair labor practice. New Breed, 111 F.3d at 1468-69. But where, as in Kallman, "[t]he facts demonstrate that [the successor] would not have agreed to union demands to pay the higher rate," the successor may not be required "to pay the higher rate beyond a period allowing for a reasonable time of bargaining." Kallman, 640 F.2d at 1103.
 
 
 34
 In fashioning its remedy in this case, the Board attempted to put the parties in the place they would have been had ASI not made the "no union" statement. This may literally be impossible as "The Moving Finger writes; and, having writ, Moves on: nor all your Piety nor Wit Shall lure it back to cancel half a Line, Nor all your Tears wash out a Word of it." Edward Fitzgerald, The Rubaiyat of Omar Khayyam, st. 71 (4th ed. 1879). One reasonable hypothesis is that, had ASI not made the "no union" statement, the union and ASI would have bargained to impasse before ASI set the new employment terms. We must give deference to the remedy fashioned by the Board. See New Breed, 111 F.3d at 1464-65. Here, the forfeiture of the right to set the new terms before bargaining to impasse was a permissible method of placing the parties where they would have been had ASI not made the "no union" statement.
 
 
 35
 The Board applied the presumption that an award of back pay and benefits under the repudiated bargaining agreement restores the status quo ante, but did not consider whether ASI had rebutted that presumption with evidence that it would have bargained to an impasse and imposed less favorable terms. See New Breed, 111 F.3d at 1468; see also U.S. Marine, 944 F.2d at 1323 ("[I]t is for the employer to demonstrate that it is not appropriate [to award back pay]. U.S. Marine has failed to do so.") (quotation marks, citation, and original alterations omitted). Nor did the ALJ make any findings in this regard, as the ALJ did not award back pay and benefits under any exception to the Burns rule.
 
 
 36
 Those facts that are in the record and bear on this question are equivocal. The ALJ found that of the eight Aero unit employees originally hired on December 1, 1992, four received the same hourly wage they had previously been paid by Aero, two received significantly more, and two received significantly less. ASI provided less vacation time and paid holidays, however, and no medical or dental benefits. Nevertheless, the ALJ found little to indicate that ASI could have found a qualified workforce outside of Aero's ranks had ASI not been able to come to terms with the incumbent union. The ALJ noted that ASI had rejected transferring employees from a machine shop that Brown owned in Gardena due to the unacceptable commute, and found that, to continue Aero's business, ASI needed a workforce with specialized skills that were not readily available in the marketplace.
 
 
 37
 The mere fact that ASI provided fewer benefits under the terms that it imposed provides little indication of what ASI might have agreed to had it fulfilled its obligation to bargain with the Union. The apparent unavailability of qualified workers outside of the Aero unit and the need to complete Aero's work in progress indicate that the Union might have brought significant negotiating power to the table. On the other hand, the fact of Aero's bankruptcy indicates that ASI might have been unwilling or even unable to continue to operate the business without significant labor concessions, and might have chosen to liquidate the company's assets rather than continue operating under the terms of the previous CBA.
 
 
 38
 Were the question regarding what would have happened had ASI recognized and bargained with the Union presented to us on a record that was ambiguous despite having been fully developed under the correct legal standard, we would resolve any uncertainty by affirming the Board's award under New Breed. See New Breed, 111 F.3d at 1468. Because the record was not fully developed on this point, however, we remand to permit ASI and the UAW to present evidence on whether ASI would have bargained to impasse and imposed terms, even had ASI honored its obligation to bargain with the Union.
 
 IV
 
 39
 The Petition for Enforcement is GRANTED IN PART and REMANDED IN PART. Each party shall bear its own costs.
 
 
 
 Notes:
 
 
 [1]
 To remedy these violations, the Board's order requires that ASI (1) cease and desist these unfair labor practices; (2) recognize and bargain with UAW; (3) make various company records available for Board inspection; (4) post notices at its facilities informing its employees that it will no longer engage in any unfair labor practices; and (5) file a sworn certification with the NLRB's Regional Director that it has taken steps to comply with the order. ASI does not challenge these remedies.
 
 
 [2]
 The dissent engages in a semantical attempt to equate the "forfeiture" of the right to set initial employment terms with a "penalty." The "forfeiture" in this case, however, merely places the parties in the position where they would have been had ASI refrained from engaging in improper conduct. Thus, the "forfeiture" qualifies as a permissible remedy.
 
 
 [3]
 To the contrary, ASI hired its entire initial complement of workers from the ranks of a represented unit of its predecessor. The Board's order, however, was not based on the "perfectly clear " exception to Burns. We therefore do not address the applicability of that exception.
 
 
 
 40
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 41
 I concur in Part I of the court's opinion, granting summary enforcement to the National Labor Relations Board's ("Board") order of prospective relief to redress Advanced Stretchforming International, Inc.'s ("ASI") violations of the National Labor Relations Act ("NLRA").
 
 
 42
 I must respectfully dissent, however, from Parts II and III. In my view, the Board's award of back pay under the terms of the collective bargaining agreement of ASI's predecessor violates the holding of NLRB v. Burns Int'l Security Services, Inc., 406 U.S. 272 (1972). This award does nothing to redress ASI's actual violations and does not restore the status quo ante. It constitutes a penalty well in excess of the Board's legal authority. In holding that this award is presumptively appropriate, the majority opinion misconstrues and misapplies the so-called "forfeiture doctrine," transforming it into a broad new exception capable of swallowing the rule set forth in Burns that a successor employer is not bound by its predecessor's collective bargaining agreement and is ordinarily free to set the initial terms of employment unilaterally. By arming the Board with an unauthorized power to punish, the majority has impermissibly upset the balance of power between management and labor that Congress established in the Act. I respectfully dissent.
 
 
 43
 * The majority's analysis begins innocently enough by restating the general rule from Burns that a successor employer is not bound by its predecessor's collective bargaining agreement ("CBA") and is free to set the initial terms of employment for its workers without first consulting with their union. See Burns, 406 U.S. at 287-88. According to the majority, however, an employer's "rights under Burns " to take such unilateral action can be forfeited if the successor "has failed to fulfill its corresponding Burns obligations." Supra at 15101. The majority reasons that, in the present case, ASI " `blocked the process by which the obligations of a successor are incurred' " by telling prospective workers that there would be "no union" at ASI and thus it forfeited its "Burns rights." Supra at 1181 (quoting the Board's decision, Advanced Stretchforming Int'l, 323 N.L.R.B. 529, 531 (1997)).
 
 
 44
 Somewhat surprisingly, the majority does not bother to tell us what exactly ASI's "Burns obligations " were and why its failure to fulfill such obligations might possibly be remedied by the forfeiture of ASI's "Burns rights " ordered by the NLRB--namely, an award of back pay under the terms of its predecessor's CBA. In fact, the reason for the majority's evasion is clear enough; the forfeiture doctrine is simply inapplicable here. The forfeiture doctrine is premised on the theory that an employer should forfeit its right to set the initial terms of employment only where it evades an actual legal obligation to consult with a union before imposing initial terms. In contrast, ASI was under no such obligation to consult with the UAW prior to imposing its initial terms of employment. In the majority's hands, the forfeiture doctrine becomes a punishment rather than a remedy.
 
 
 45
 * In Burns, the Supreme Court addressed the obligations under the NLRA of successor employers such as ASI. The Court held that when a new employer acquires a business, it is free, generally, to set the initial terms and conditions of employment, and is not bound by its predecessor's CBA. See id. at 281-82, 287-88, 294-95. The successor employer is, however, obligated to bargain with the union after setting initial terms. See id. at 281.
 
 
 46
 There are three established exceptions to the Burns rule. A successor employer's right to set initial terms is limited if (1) the successor employer is the "alter ego" of the predecessor, see Sheet Metal Workers Int'l Assoc. v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 651 (9th Cir. 1988); (2) the successor employer assumes or adopts the obligations of the predecessor's CBA, see id.; or (3) if "it is perfectly clear that the new employer plans to retain all of the employees in the [bargaining] unit," Burns, 406 U.S. at 294-95 (emphasis added).
 
 
 47
 The third exception to the Burns rule, the "perfectly clear" exception, requires a successor to consult with an incumbent union before altering the predecessor's terms and conditions of employment when it is "perfectly clear that the new employer plans to retain all of the employees in the[bargaining] unit." Burns, 406 U.S. at 294-95. The Court established this exception in Burns, stating:
 
 
 48
 Although a successor employer is ordinarily free to set the initial terms on which it will hire the employ ees of a predecessor, there will be instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will be appropriate to have him initially consult with the employees' bargaining representative before he fixes terms.
 
 
 49
 Id. (emphasis added). An employer subject to this exception is not bound by its predecessor's CBA, nor is it required to agree to the terms the union proposes. See Burns , 406 U.S. at 282. Rather, the successor employer must simply "consult" with the union before setting the initial terms and conditions of employment. See id. at 295; Kallmann v. NLRB, 640 F.2d 1094, 1102 (9th Cir. 1981).
 
 
 50
 The majority has sensibly abandoned its previous attempt to justify the Board's award under the Burns perfectly clear exception.[1] This is prudent, given that the ALJ correctly concluded that the exception is simply not implicated on these facts and the Board itself specifically disavowed any reliance on it, stating that the exception "was not determinative of the legality of [ASI's] conduct." Advanced Stretchforming, 323 NLRB at 529. Unfortunately, the Burns perfectly clear exception remains lurking in the background. The Board's award can only be justified if ASI breached a duty to negotiate with the UAW prior to setting the initial terms of employment. Despite its new reliance on the forfeiture doctrine without reference to the perfectly clear exception, the majority (to borrow from its quotation of the Rubaiyat of Omar Khayyam) has failed to "cancel half a Line" or "wash out a Word" of its previous ill-starred attempt to apply the Burns perfectly clear exception to this case.
 
 
 51
 In actuality, given that the perfectly clear exception does not apply here, ASI's only obligation under Burns was to negotiate with the UAW after it had unilaterally set initial terms of employment. It is not contested that ASI breached this obligation. Nevertheless, as the majority concedes, the Board's award of back pay was premised on the notion that "ASI unlawfully and unilaterally changed the employment terms without first bargaining with the union." See supra at 1179 (citing Advanced Stretchforming Int'l, 323 N.L.R.B. 529, 531 (1997)) (emphasis added). Because ASI was punished for violating an obligation it did not, in fact, have, the Board's award of back pay should be rejected.
 
 B
 
 52
 In its attempt to justify the Board's award, the majority invokes the so-called "forfeiture doctrine," which courts have properly characterized as a "corollary" to the perfectly clear exception. See Capital Cleaning Contractors, Inc. v. NLRB, 147 F.3d 999 (D.C. Cir. 1998).
 
 
 53
 The majority views the doctrine differently. Quoting the Board, the majority describes the forfeiture doctrine as follows:
 
 
 54
 The fundamental premise for the forfeiture doctrine is that it would be contrary to statutory policy to "confer Burns rights on an employer that has not conducted itself like a lawful Burns successor because it has unlawfully blocked the process by which the obligations and rights of such a successor are incurred." . . . In other words, the Burns right to set initial terms and conditions of employment must be understood in the context of a successor employer that will recognize the affected unit employees' collective-bargaining representative and enter into good-faith negotiations with that union about those terms and conditions.
 
 
 55
 See supra at 1180 (quoting Advanced Stretchforming, 323 NLRB 529, 530) (emphasis added). Thus, in the Board's view, a view which the court today adopts, another exception to the Burns rule exists when a new employer attempts to avoid becoming a successor employer or fails to fulfill its duty to recognize and to bargain with the incumbent union. Apparently, only a successor who complies with all of its obligations under the NLRA can set the initial terms of employment; any unfair labor practice that "block[s] the process by which the obligations and rights of [ ] a successor are incurred," id., causes the employer to forfeit its rights. Hence, the majority opinion concludes that ASI's "no union" statement caused ASI to forfeit its right to set initial terms without first bargaining with UAW. The majority has it wrong.
 
 
 56
 As the majority implicitly acknowledges, see supra at 1181, courts have previously applied the forfeiture doctrine only in cases in which a successor employer discriminatorily refused to hire its predecessor's employees because of their union membership. See Kallmann, 640 F.2d at 1102-03; U.S. Marine Corp., 293 NLRB 669 (1989), enforced , 944 F.2d 1305 (7th Cir. 1991). Indeed, courts have held that a successor employer who discriminatorily refuses to hire its predecessor's employees based on their union membership forfeits its right to set the initial terms of employment. See, e.g., Kallmann, 640 F.2d at 1102-03; U.S. Marine Corp. v. NLRB, 944 F.2d 1305, 1320 (7th Cir. 1991); NLRB v. Horizons Hotel Corp., 49 F.3d 795, 806 (1st. Cir. 1995); Capital Cleaning Contractors, Inc. v. NLRB, 147 F.3d 999, 1008 (D.C. Cir. 1998). The majority now seeks to expand, for the first time, the scope of the forfeiture doctrine outside the discriminatory hiring context.
 
 
 57
 The majority justifies its application of the forfeiture doctrine here because ASI's violation of the NLRA by making "no union" statements is "similar" to the discriminatory hiring practices of employers such as Kallmann. This is simply not the case. The discriminatory hiring cases are distinguishable because the "fundamental premise" behind the forfeiture doctrine in the discriminatory hiring cases is that but for the successor employer's discriminatory refusal to hire its predecessor's employees, the employer would have come within the perfectly clear exception to the Burns rule, and thus would have been obligated to consult the union before setting the initial terms of employment. See U.S. Marine , 944 F.2d at 1320 ("Where all or substantially all of the predecessor's employees would have been retained but for the successor's unlawful discrimination, the successor loses the right to set initial terms and conditions of employment and violates the [NLRA] if it unilaterally alters the predecessor's terms without first consulting with the union . . . . But for its unlawful conduct, U.S. Marine would have hired substantially all of [its predecessor's] employees and therefore would have been obligated to consult with the Union before setting the terms and conditions of employment."); Capital Cleaning, 147 F.3d at 1008 ("[B]ecause Capital refused to hire the Ogden employees based upon their union membership, the Board properly presumed that but for such discrimination Capital would have hired a majority of the Ogden employees from the outset. Accordingly, Capital had a duty to bargain with Local 32 and therefore did not have the right unilaterally to set the terms and conditions upon which it offered employment.").
 
 
 58
 Applying the forfeiture doctrine in these types of cases prevents the successor employer from avoiding the perfectly clear exception through his "unlawful conduct. " See Kallmann, 640 F.2d at 1102-03 (holding that the Board correctly found that the perfectly clear exception applied because "any uncertainty regarding whether substantially all the former employees would have been retained had to be resolved against [the successor employer] because he could not benefit from his . . . [discriminatory] conduct" (footnote omitted)). More precisely, because the employers in such cases never would have had the right unilaterally to set the initial employment terms absent their discriminatory hiring, holding that they forfeit their right to set the initial terms of employment simply restores the status quo ante. Cf. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 900 (1984) (noting that the Board's remedial authority includes the ability "to restore the situation `as nearly as possible, to that which would have obtained' but for" any unfair labor practice (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194 (1941))).
 
 
 59
 Such rationale, however, does not justify holding that ASI forfeited its right to set initial terms. The majority falls far short in explaining how the application of the forfeiture doctrine here restores the situation to the status quo ante. But for ASI's unlawful conduct, i.e., its "no union" statement, it still would not have been subject to the "perfectly clear" exception and hence did not have any duty to consult with UAW before setting the initial terms of employment. Thus, the majority's "hypothesis," see supra at 1182, that ASI might have bargained to impasse before setting initial terms had it not made the "no union" statement is patently unreasonable.
 
 
 60
 Clearly, then, because the rationale underlying the forfeiture doctrine is inapplicable to this case, the discriminatory hiring cases provide absolutely no authority for the court's argument that ASI should be held to have forfeited its right to set initial hiring terms. The remedy that the Board misapplied in this case is one specifically designed to redress an employer's violation of the obligation created by the "perfectly clear" exception, nothing more. The majority utterly fails to justify extending its application here.
 
 C
 
 61
 Given this close link between the forfeiture doctrine and the perfectly clear exception of Burns, could it be that, despite its disclaimer in footnote 3, the majority has persisted in its attempt to apply the perfectly clear exception to the instant case, this time sub silentio? The majority justifies its application of the forfeiture doctrine thus:
 
 
 62
 Here, no discriminatory hiring practices prevented ASI's "perfectly clear" obligation from arising. Instead, the "no union" statement chilled the invoca tion of that obligation once it had arisen. Having been informed when invited to apply for work with ASI that there would be no union at the new com pany, Aero's workers may well have believed that employment with ASI was contingent on abstaining from union representation, including insistence on the right to bargain before ASI imposed initial terms.
 
 
 63
 Supra at 1181-82 (emphasis added). The majority misses the point. Because none of the exceptions to the Burns rule applies here, Aero's workers had, in fact, no right to union bargaining before ASI imposed initial terms. While the majority now explicitly disclaims any reliance on the Burns "perfectly clear" exception, it nonetheless denies that ASI had the right unilaterally to set its initial terms of employment. The latter simply cannot be true.
 
 II
 
 64
 The majority's application of the forfeiture doctrine is not only fundamentally inconsistent with the doctrine's underlying rationale, it is irreconcilable with Burns itself. In that case, Burns, as a successor employer, had violated the NLRA by unlawfully assisting a union which was a rival of its predecessor's employees' union and failing to recognize and to bargain with the incumbent union. See 406 U.S. at 276. However, the Court rejected the Board's finding that Burns was bound by its predecessor's CBA or that it had violated the NLRA by setting initial employment terms. See id.
 
 
 65
 The Court viewed a successor's duty to bargain and the right to set initial terms as separate issues:
 
 
 66
 Although Burns had an obligation to bargain with the union concerning wages and other conditions of employment when the union requested it to do so, . . . [i]t is difficult to understand how Burns could be said to have changed unilaterally any pre-existing terms or condition of employment without bargain ing when it had no previous relationship whatsoever to the bargaining unit and, prior to [the date Burns began operations], no outstanding terms and condi tions of employment from which a change could be inferred.
 
 
 67
 Id. at 294 (italics in original) (emphasis added). Thus, the Court rejected the Board's position that Burns violated the NLRA by setting the initial terms of employment, even though Burns can be said to have attempted to "block[ ] the process by which the obligations and rights of [ ] a successor are incurred," see supra at 1180, by refusing to bargain with the incumbent union and by unlawfully assisting a rival union. See Burns, 406 U.S. at 295-96.
 
 
 68
 Burns directly controls this case. In Burns, the employer violated the NLRA by failing to bargain with the incumbent union and interfering with its employees' organizational rights by assisting a rival union, and yet the Court held that Burns retained the right to set initial hiring terms. See 406 U.S. at 294. Here, ASI similarly violated the NLRA by failing to bargain with the incumbent union and by interfering with its employees' organizational rights through its "no union" statement. Yet, contrary to Burns, the court today holds that ASI forfeited the right to set initial hiring terms. The court appears to confuse a successor employer's obligations under the NLRA, and its right to set the initial terms of employment. Burns made clear that these issues are not inter-linked.
 
 III
 
 69
 The Board has only remedial power and does not have the power to impose punishment for violations of the NLRA. See Phelps Dodge, 313 U.S. at 194. This limitation on the Board's authority "at a minimum . . . encompasses the requirement that a proposed remedy be tailored to the unfair labor practice it is intended to redress." Sure-Tan, Inc. , 467 U.S. at 900. The majority has not even come close to explaining how forfeiture of ASI's right unilaterally to establish employment terms redresses ASI's unlawful "no union" statements. ASI never had, and never would have had, an obligation to consult with the UAW prior to imposing initial terms. The appropriate remedy for ASI's "no union" statement is an order directing ASI to cease and to desist telling potential applicants that ASI intends to operate with no union. The Board's order does so in this case. To add that ASI forfeited its right to set the initial terms of employment because of this unfair labor practice is "a penalty by another name -and not a much different name at that." U.S. Marine, 944 F.2d at 1328 (Easterbrook, J., dissenting). Indeed, a synonym of forfeit is "penalty." See Webster's Ninth New Collegiate Dictionary 484 (1987) (defining forfeit as "something forfeited or subject to being forfeited . . . PENALTY").
 
 
 70
 This court cannot authorize the Board to impose penalties. I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The majority affirmed the Board's award on the basis of the perfectly clear exception in a now-withdrawn opinion. See NLRB v. Advanced Stretchforming Int'l, Inc., 208 F.3d 801 (9th Cir. 2000).